## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CECIL POUNCEY, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0103** |
| **ROBERT TANNER, CCE, WARDEN** | **SECTION "I"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including

an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant

to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section**

**2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be

disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I. Factual Background

The petitioner, Cecil Pouncey, III ("Pouncey"), is a convicted inmate, incarcerated in the

B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] He was charged by bill of

information in St. Tammany Parish with one count of possession of cocaine.[3]

The record indicates that on October 3, 2007, at approximately 9:45 p.m., Sergeant Stephen

Culotta of the Covington Police Department was patrolling an area known for high crime and

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 1.

[3]St. Rec. Vol. 1 of 4, Bill of Information, 12/3/07.

narcotics activity in an unmarked automobile.[4] As he did so, Sergeant Culotta noticed a black Ford

Mustang automobile parked in the middle of the intersecting roadway. Sergeant Culotta knew that

the house closest to the stopped Mustang was abandoned. He then observed an individual approach

the passenger's side of the Mustang and bend inside the vehicle in apparent conversation. Several

moments later, the individual looked up and noticed the unmarked police vehicle at the intersection.

According to Sergeant Culotta, the individual exhibited an immediate look of surprise and backed

away from the Mustang into a dark wooded area near the abandoned house.

Sergeant Culotta explained that, given the nature of that area, he felt that his presence had

interrupted some activity, so he drove around the block and parked his vehicle in a dark area. The

black Mustang remained parked in the middle of the roadway and within a short time, the individual

reappeared, walked toward the Mustang, reached inside the passenger window, and then again

backed off into the wooded area.

Immediately thereafter, the Mustang drove off. As the Mustang approached the intersection,

it turned left without its turn signal being activated. Sergeant Culotta followed the Mustang and

observed it turn left again without a turn signal.

Sergeant Culotta initiated the traffic stop by activating his unit's emergency lights. The

Mustang pulled into the parking lot of a convenience store. Sergeant Culotta ordered the driver to

exit the automobile and to walk to the back of the automobile. The driver, Pouncey, complied and

met Sergeant Culotta at the back of the automobile. Sergeant Culotta explained to Pouncey he had

been stopped for his failure to use a turn signal. Sergeant Culotta then mentioned the suspicious

---

[4]The facts were taken from the Louisiana First Circuit Court of Appeal opinion after direct appeal. *State v. Pouncey*, No. 2009-KA-0075, 2009 WL 165598 (La. App. 1 Cir. June 12, 2009); St. Rec. Vol. 2 of 4, 1st Cir. Opinion, 2009-KA-0075, pp. 2-4, 6/12/09.

activity he had observed regarding the Mustang parked in the middle of the roadway.

Sergeant Culotta testified that Pouncey was visibly nervous, shaking, and stuttering. In the course of the encounter, Pouncey placed his right hand into his right front pocket. Sergeant Culotta ordered Pouncey to remove his hand, but several minutes later, Pouncey again placed his hand into the pocket. Sergeant Culotta then requested Pouncey's permission to conduct a pat down search for weapons on his person. Pouncey acquiesced and pursuant to Sergeant Culotta's instruction, turned and placed his hands on the back of his automobile. As Sergeant Culotta began the search, Pouncey placed his hand into his right front pant pocket, and removed an object. Sergeant Culotta grabbed Pouncey's arm and shook the item out of his hand as he asked Pouncey to drop it. As the object, a cigarette pack, was being shaken, Sergeant Culotta could hear a rattle consistent with the presence of a hard object inside the pack. Pouncey dropped the cigarette pack onto the hood of the trunk.

Knowing that cigarette packs are commonly used to conceal narcotics, Sergeant Culotta asked Pouncey what was in the pack. Pouncey replied, "I got a little something to smoke." Sergeant Culotta, believing that Pouncey was referring to crack cocaine, picked up the pack, opened it, and discovered three large rocks of suspected crack cocaine. No other items were inside the pack.

Sergeant Culotta placed Pouncey under arrest for possession of crack cocaine. Initial field tests indicated the substance was cocaine and that the total amount weighed 4.86 grams. According to Sergeant Culotta, this amount appeared to comprise of approximately nine (9) rocks of crack cocaine. Subsequent testing by St. Tammany Parish Crime Laboratory confirmed that the substance was cocaine.

## II.    **Procedural Background**

On March 4, 2008, following trial in the 22nd Judicial District Court for the Parish of St.

3

Tammany, a jury found Pouncey guilty as charged.[5] On March 17, 2008, the Trial Court sentenced Pouncey to five years of imprisonment at hard labor with the Department of Public Safety and Corrections of the State of Louisiana.[6]

On March 17, 2008, the State filed a multiple offender bill alleging Pouncey to be a second felony offender under Louisiana's Habitual Offender Law.[7] After a hearing on September 18, 2008, the Trial Court found Pouncey to be a second felony offender and resentenced him to a term of ten years at hard labor in the custody of the Department of Public Safety and Corrections of the State of Louisiana.[8]

Subsequently, on February 25, 2009, Pouncey appealed to the Louisiana First Circuit Court of Appeal, asserting the following errors:[9] (1) the Trial Court erred in not granting his motion to suppress evidence; (2) the Trial Court erred in denying his motion for post-verdict judgement of acquittal, based upon insufficiency of evidence; (3) the Trial Court erred in denying his motion to quash the habitual offender bill of information; and (4) his sentence was excessive.

On June 12, 2009, the Louisiana First Circuit affirmed Pouncey's conviction.[10] The Court found no merit to the first two assignments of error, but found the evidence was insufficient as to the predicate conviction for the habitual offender adjudication. The Court vacated that adjudication

---

[5]St. Rec. Vol. 1 of 4, Verdict Form, 3/4/08; Minute Entry, 3/4/08.

[6]St. Rec. Vol. 1 of 4, Minute Entry, 3/17/08; St. Rec. Vol. 2 of 4, Sentencing Transcript, 3/17/08.

[7]St. Rec. Vol. 1 of 4, Multiple Offender Bill, 3/17/08.

[8]St. Rec. Vol. 1 of 4, Minute Entry, 9/18/08; St. Rec. Vol. 2 of 4, Multiple Offender Hearing Transcript, 9/18/08.

[9]St. Rec. Vol. 4 of 4, Pet.'s 1st Cir. Brief, 2010-KA01129, 2/2509.

[10]*State v. Pouncey*, 11 So.3d 1244 (La. App. 1 Cir. 2009); St. Rec. Vol. 3 of 4, 1st Cir. Order, 2009-KA-0075, 6/12/09.

and remanded for further proceedings.[11]

Subsequently, on July 23, 2009, Pouncey applied *pro se* for a writ of certiorari to the Louisiana Supreme Court, raising the following assignments of error:[12]  (1) the Louisiana First Circuit erred in not granting his motion to suppress evidence; (2) the Louisiana First Circuit erred in its decision relating to the sufficiency of the evidence; and (3) the Louisiana First Circuit erred in its decision relating the habitual offender adjudication.  Pouncey also filed a supplemental application for writ of certiorari in which he further argued the evidence presented at trial was insufficient.[13]  The Louisiana Supreme Court denied his writ without comment on May 21, 2010.[14]

On November 5, 2009, upon remand, Pouncey was again adjudicated as a second felony offender and sentenced to ten years imprisonment, with credit for time served.[15]

Thereafter, on July 30, 2010, Pouncey appealed to the Louisiana First Circuit for a second time, arguing:[16]  (1) the Trial Court erred in denying the motion to quash the use of the predicate offense, because the State failed to honor the plea agreement made in connection with the predicate offense; (2) the State had no authority to "get a second bite of the apple"; and (3) his sentence was excessive because he is a non-violent offender with a drug addiction.  The Louisiana First Circuit found no merit to Pouncey's assignment of errors and on February 11, 2011, affirmed the habitual

---

[11]*Id*.

[12]St. Rec. Vol. Supp. 1 of 1, Pet's S.Ct. Writ App., 2009-KA-0075, 7/23/09.

[13]St. Rec. Vol. Supp. 1 of 1, Supp. Writ App., 2009-KA-0075, 10/2/09.

[14]*State v. Pouncey*, 36 So.3d 221, (La. 2010);  St. Rec. Vol. 2 of 4, S. Ct Order, 2009-KO1691, 5/21/10.

[15]St. Rec. Vol. 1 of 4, Minute Entry, 11/5/09; St. Rec. Vol. 2of 4 Trial Court Transcript, 11/5/09.

[16]St. Rec. Vol. 4 of 4, Pet.'s 1st Cir. Brief, 2010-KA01129, 7/30/10.

offender adjudication and sentence.[17]  Because Pouncey did not timely seek further review, his

conviction became final 30 days later, on March 14, 2011.  *See Roberts v. Cockrell*, 319 F.3d 690,

694-95 (5th Cir. 2003) (under federal habeas law, a conviction and sentence are final when the state

defendant does not timely proceed to the next available step in the state appeal process); *see also*

*Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgement includes conviction and

sentence, therefore AEDPA "limitations period did not begin until both his conviction and sentence

'became final by the conclusion of direct review or the expiration of time for seeking such review,"

citing 28 U.S.C. § 2244(d)(1)(A)); La. S.Ct. R. X§5(a) (an application seeking review of the

judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the

appellate court's judgment).

On April 5, 2011, Pouncey sought an untimely review by the Louisiana Supreme Court, in

which he argued:[18]  (1) the State Court erred in denying his motion to quash the habitual offender

bill of information; (2) his sentence was excessive because he is a non-violent offender with a drug

addiction; (3) the State prosecution failed to present sufficient evidence to prove that he was the

person who had been convicted of the prior predicate offense to be re-used in Multiple Offender

Sentencing; and (4) the State's choice to support its position by producing a certified record for re-

implementing an enhanced penalty set forth in La. Rev. Stat. §15:529.1 amounted to prosecutorial

misconduct.  The Louisiana Supreme Court summarily denied his writ on February 17, 2012.[19]

In the meantime, on October 26, 2011, Pouncey filed with the Trial Court a motion to

---

[17]*State v. Pouncey*, 57 So.3d 612 (La. App 1 Cir. 2011);  St. Rec. Vol. 3 of 4, 1st Cir. Order,2010-KA-1129, 2/11/11.

[18]St. Rec. Vol. 4 of 4, Pet's Writ App., 2011-KH-709, 4/5/11.

[19]*State v. Pouncey*, 82 So.3d 277 (La. 2012).

reconsider sentence in which he argued:[20]  (1) his conviction was not supported by an adequate factual basis; (2) his addiction to illicit drugs should have benefitted him through the Louisiana Sentencing Guidelines; (3) the Trial Court erred in not addressing his dependancy on drugs, which stemmed from his veteran status, that could warrant a downward sentencing; (4) there was insufficient evidence to support his conviction; (5) Trial Court abused its discretion when it denied quashing the use of the predicate offense; (6) the Trial Court was biased when it allowed the State to "get a second bite of the apple"; and (7) the Trial Court did not consider the disparities in crack and powder cocaine for sentencing.  The Trial Court denied his motion on October 27, 2011.[21]  He did not seek further review of this motion.

III.    **Federal Habeas Petition**

On January 13, 2012, the clerk of this Court filed Pouncey's petition for federal habeas corpus relief in which he raised two claims.  First, Pouncey argues for leniency in sentencing because of his status as a Veteran in the United States Armed Forces.  Second, he argues that he was denied effective assistance of counsel based on the following seven grounds:  (1) his conviction was not supported by an adequate factual basis; (2) his addiction to illicit drugs should have benefitted him through the Louisiana Sentencing Guidelines; (3) the Trial Court erred in not addressing his dependancy on drugs, which stemmed from his veteran status, that could warrant a downward sentencing; (4) there was insufficient evidence to support his conviction; (5) Trial Court abused its discretion when it denied quashing the use of the predicate offense, which infringed upon the

---

[20]St. Rec. Vol. 3 of 4, Pet's Motion to Reconsider Sentence, 10/26/11.

[21]The Trial Court's October 27, 2011 Order was not included in the State Record.  This information was found from:  Rec. Doc. 1; St. Rec. Vol. 3 of 4, Letter from Clerk of Trial Court to Pouncey Regarding Denial of Motion to Reconsider Sentence, 10/28/11.

original plea agreements; (6) the Trial Court was biased when it allowed the State to "get a second

bite of the apple"; (7) the Trial Court did not consider the disparities in crack and powder cocaine

for sentencing.

The State filed a response in opposition to Pouncey's petition, arguing that while his petition

is timely filed, his claims have not been properly exhausted in state court. The State broadly

construed Pouncey's claims to be, an argument for leniency and an argument against the

applicability of the Armed Career Criminal Act. The State contends that neither of these claims

were raised in Pouncey's direct appeals and therefore, this action should be dismissed without

prejudice, for failure to exhaust state court remedies.

## IV.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[22] applies to this petition, which is deemed filed in this court under the federal

mailbox rule on December 30, 2011.[23] The threshold questions in habeas review under the amended

statute are whether the petition is timely and whether the claim raised by the petitioner was

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

---

[22]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505, n.11 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Pouncey's federal habeas petition on January 13, 2012, when the filing fee was received. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374). Pouncey dated his signature on the petition on December 30, 2011. This is the earliest date on which he could have delivered it to prison officials for mailing to this Court.

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State concedes, and the Court has determined, that Pouncey's petition was timely filed. The State argues that Pouncey has failed to properly exhaust state court remedies as to the claim regarding leniency. However, the State fails to address Pouncey's ineffective assistance of counsel claim, which was only addressed within Pouncey's form petition. Upon review, the Court finds that Pouncey has failed to properly exhaust state court remedies as to both of his claims.

## V.     Exhaustion Requirement

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). This means that "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing

*Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

In this case, a review of Pouncey's state court pleadings demonstrate that he has not exhausted state court remedies as to both of his federal claims. Pouncey presented his first claim, regarding leniency in sentencing due to his veteran status, for the first time in his motion for reconsideration of sentence, filed in the Trial Court on October 26, 2011. However, Pouncey did not seek review of the Trial Court's denial of relief in either the Louisiana First Circuit or the Louisiana Supreme Court. Therefore, he failed to exhaust available remedies as to this claim.

In addition, Pouncey never raised his second claim, regarding ineffective assistance of counsel, in any of his state court pleadings. Consequently, because no state court was fairly presented with this claim, the ineffective assistance of counsel claim is not exhausted.

Thus, a review of Pouncey's applications presented to the Louisiana Supreme Court reflects that both of the claims raised in this federal petition were not properly raised there for review. His failure to present each of these arguments to each level of the Louisiana courts in a procedurally proper manner renders his federal claims unexhausted. *See Wilder*, 274 F.3d at 259; *Baldwin*, 541 U.S. at 29.

The record discloses no good cause for Pouncey's failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore his petition should be dismissed without prejudice to allow Pouncey to pursue exhaustion of his claims in the appropriate state courts.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Cecil Pouncey, III's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[24]

New Orleans, Louisiana, this 20th day of August, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.